CITY OF SEABROOK, Plaintiff,

Richard D. Rogan, et al., Plaintiffs-Appellants,

v.

Douglas M. COSTLE, Administrator, Environmental Protection Agency, Defendant-Appellee.

No. 80–2103.

United States Court of Appeals, Fifth Circuit.*
Unit A

Oct. 30, 1981.

* Former Fifth Circuit case, Section 9(1) of Public Law 96–452—October 14, 1980.

**1372**

James M. Scott, Jr., Sugarland, Tex., for plaintiffs-appellants.

Jose R. Allen, Dept. of Justice, Pollution Control Section, Washington, D. C., for defendant-appellee.

Before REAVLEY, RANDALL and SAM D. JOHNSON, Circuit Judges.

REAVLEY, Circuit Judge:

Plaintiffs brought this action in federal district court pursuant to § 304(a)(2) of the Clean Air Act, 42 U.S.C. § 7604(a)(2) (Supp. III 1979), to compel the Administrator of the Environmental Protection Agency to perform allegedly nondiscretionary duties imposed by the Act. The district court dismissed the suit for lack of subject matter jurisdiction. Plaintiffs appeal. We affirm.

This suit is a companion to the petitions which we have denied today in *City of Seabrook v. United States Environmental Protection Agency*, 659 F.2d 1349 (5th Cir. 1981). The parties in both cases are the same. The complaint alleges many of the same violations of the Clean Air Act alleged in the petitions; we refer to our decision on the petitions for a discussion of the background of the case and the issues raised by the plaintiffs.

On this appeal, plaintiffs argue that their complaint alleged two failures to perform nondiscretionary duties which conferred jurisdiction on the district court under § 304(a)(2) of the Clean Air Act, 42 U.S.C. § 7604(a)(2): (1) the Administrator's failure to promulgate Part D revisions to the Texas state implementation plan ("SIP") by July 1, 1979; (2) the Administrator's failure to

notify certain persons that they have been violating the Texas SIP.[1]

## I. Failure to Promulgate Part D Revisions

Plaintiffs filed this suit on March 3, 1980. On March 25, 1980, the Administrator published a "final rule" approving and conditionally approving the SIP revisions filed by Texas to comply with Part D of Subchapter I of the Clean Air Act, 42 U.S.C. §§ 7501–7508. 45 Fed.Reg. 19231; see City of Seabrook v. USEPA, 659 F.2d at 1352. Even if we assume, without deciding, that the district court had jurisdiction of plaintiffs' claim on March 3, 1980,[2] the publication of the "final rule" clearly left the district court without jurisdiction of the claim. Section 307(b)(1) of the Act gives the courts of appeals exclusive jurisdiction of "[a] petition for review of the Administrator's action in approving or promulgating any implementation plan . . . or any other final action of the Administrator." 42 U.S.C. § 7607(b)(1). Once the Administrator had issued his "final rule" on the Texas Part D revisions, plaintiffs could seek review, as they did, only in the court of appeals.

Plaintiffs contend that some components of the Administrator's "final rule" were not "final action" because, plaintiffs say, they are complaining not only of what the Administrator has done, but of what he has failed to do—i. e., to promulgate Part D SIP revisions for Texas. Plaintiffs also argue that the Administrator's decision to "conditionally approve" portions of the Texas SIP revisions is not "final action" because, if the conditions are not met, the Administrator may ultimately disapprove the SIP.

We cannot agree with plaintiffs' interpretation of the words "final action" in § 307(b)(1). "The cases dealing with judicial review of administrative actions have interpreted the 'finality' element in a pragmatic way." Abbott Laboratories v. Gardner, 387 U.S. 136, 149, 87 S.Ct. 1507, 1516, 18 L.Ed.2d 681 (1967) (discussing the meaning of "final agency action" under judicial review provision of Administrative Procedure Act, 5 U.S.C. § 704). The suggestion that the district court can order the Administrator to do things he has failed to do in the SIP approval process while the court of appeals is reviewing what the Administrator has actually done would result in an impractical process of piecemeal review that Congress could not have intended in §§ 304 and 307. Furthermore, we believe that the "conditional approvals" were indeed "final action[s] of the Administrator." As we have explained today in City of Seabrook v. USEPA, "conditional approval" was a decision by the Administrator that the SIP revisions would meet the statutory requirements if certain specific conditions were met. The basis of granting "conditional approval" was the state's assurance and the Administrator's assumption that the conditions would indeed be met. See 659 F.2d at 1358. The conditional approval was "promulgated in a formal manner" and was a "definitive" statement of the agency's final position on the Texas SIP, not merely a "tentative" conclusion. See Abbott Laboratories v. Gardner, 387 U.S. at 151, 87 S.Ct. at 1517.

## II. Failure to Give Notification Required by Section 113 of the Act

Section 113 of the Clean Air Act provides in pertinent part:

(a)(1) Whenever, on the basis of any information available to him, the Administrator *finds* that any person is in violation of any requirement of an applicable implementation plan, the Administrator *shall* notify the person in violation of the plan and the State in which the plan applies of such finding . . . .

---

1. Plaintiffs also argue that the district court should have entered a default judgment because the EPA's motion to dismiss was filed four days late. Since we conclude that the district court was without power to enter any judgment in this action, plaintiffs' argument is academic.

2. The assumption is problematic. Since we have decided today that the Administrator acted within his discretion in declining to promulgate SIP revisions, see City of Seabrook v. USEPA, 659 F.2d at 1358, it would appear that plaintiffs have alleged no nondiscretionary duty which the Administrator failed to perform.

(2) Whenever, on the basis of information available to him, the Administrator *finds* that violations of an applicable implementation plan are so widespread that such violations appear to result from a failure of the State in which the plan applies to enforce the plan effectively, he *shall* so notify the State. If the Administrator *finds* such failure extends beyond the 30th day after such notice, he *shall* give public notice of such finding.

42 U.S.C. § 7413 (emphasis added). Even if the words "shall notify" impose a nondiscretionary duty on the Administrator to give notifications under certain circumstances, plaintiffs did not allege a failure to perform a nondiscretionary duty entitling them to bring a "citizens' suit" under § 304(a)(2).

 Plaintiffs do not allege that the Administrator has ever made any finding either that "any person is in violation of any requirement of [the Texas] implementation plan" or that "violations of [the Texas] implementation plan are so widespread that such violations appear to result from a failure of the State . . . to enforce the plan effectively." Nor do plaintiffs ask leave to amend their complaint to make such allegations. Instead, plaintiffs argue that the Administrator had a nondiscretionary duty to make such findings on the basis of information available to him. We cannot agree with this argument.

A district court has jurisdiction under § 304(a)(2) only if the plaintiff has alleged a duty which is not discretionary under the Clean Air Act. 42 U.S.C. § 7604(a)(2). The language of neither § 113 nor any other section of the statute imposes a mandatory duty on the Administrator to make a finding every time some information concerning a possible violation of a SIP is brought to his attention. In the absence of a clear statutory mandate, we decline to impose such a duty on the Administrator.

The branches of government charged with the investigation of violations of the law and with enforcement of the law have traditionally been afforded broad discretion in carrying out these duties. We have held, for example, that the Attorney General's discretion "in choosing whether to prosecute or not to prosecute . . . is absolute." *Smith v. United States*, 375 F.2d 243, 247 (5th Cir.), *cert. denied*, 389 U.S. 841, 88 S.Ct. 76, 19 L.Ed.2d 106 (1967). The courts have recognized that, at least in the absence of a contrary statutory command, administrative agencies should be afforded similarly broad discretion. *See Rockford Redi-Mix Co. v. Zipp*, 632 F.2d 30, 32 n.5 (7th Cir. 1980) (collecting numerous cases holding NLRB's decision not to issue an unfair labor practice complaint nonreviewable), *cert. denied*, 450 U.S. 929, 101 S.Ct. 1388, 67 L.Ed.2d 362 (1981); *Kixmiller v. SEC*, 492 F.2d 641, 645 (D.C.Cir. 1974) ("An agency's decision to refrain from an investigation or an enforcement action is generally unreviewable . . . ."). This principle of almost absolute discretion in initiating enforcement action should apply with equal force to the decision to take the preliminary investigatory steps that would provide the basis for enforcement action.

Given this tradition of broad prosecutorial discretion, we do not think that § 113(a) should be interpreted to impose a nondiscretionary duty to make findings whenever a violation of a SIP is alleged.

Plaintiffs rely heavily on *Wisconsin's Environmental Decade, Inc. v. Wisconsin Power & Light, Inc.*, 395 F.Supp. 313 (W.D.Wis. 1975), in which the court held that the Administrator does indeed have a nondiscretionary duty under § 113(a) to make a finding when information concerning a possible violation is made available to him. *Id.* at 320. The *Wisconsin Environmental* court acknowledged that its interpretation found clear support in neither the statutory language nor its legislative history. *Id.* The court first held that the Administrator has a nondiscretionary duty to issue a notice of violation under § 113(a) whenever he actually does find a violation. *Id.* at 317–20.[3]

---

**3.** In reaching this initial conclusion, the *Wisconsin Environmental* court relied on the maxim that the word "shall" is normally interpreted to impose a mandatory duty. *See* 395 F.Supp. at 318. We note that, when duties within the traditional realm of prosecutorial

Having begun with that conclusion, the district judge reasoned,

> I must also conclude that when presented with evidence indicating that a violation may exist, the Administrator must make a finding that a violation does or does not exist. Because I consider that Congress made a deliberate decision that the duty to issue notices of violation should be non-discretionary, I cannot accept an interpretation of the language of § [113(a)] which would make this duty an empty one by permitting the Administrator to make a finding or not make a finding as he or she sees fit. *Contra, New Mexico Citizens v. Train*, 6 ERC 1061 (D.N.M. 1974).

395 F.Supp. at 320.

We think that the *Wisconsin Environmental* court's creation of a nondiscretionary duty which is not imposed by the statutory language pays too little heed to the doctrine of prosecutorial discretion. One of the principal bases for the doctrine is judicial recognition that enforcement agencies have only limited resources at their command. The enforcement agencies are duty-bound to allocate those resources in the interest of the general public as they perceive it, not in the causes deemed most important by individual citizens. The *Wisconsin Environmental* court would require the EPA to investigate and make considered findings on every alleged violation, without regard to the significance of the alleged violation, the reliability or credibility of the information received, or the most efficient allocation of the agency's resources in carrying out its many statutory duties.

■■■ The *Wisconsin Environmental* court's argument that the duty to issue a notice upon finding a violation would be an "empty one" if the Administrator could avoid the duty by failing to make a finding is based ultimately on the assumption that the EPA will not carry out its investigatory duties in good faith. This is an assumption which, in the absence of clear statutory language or legislative history, we are unwilling to attribute to Congress. We hold that § 113(a) does not impose a nondiscretionary duty to make a finding on every alleged violation of a SIP. Therefore, the district court correctly decided that § 304(a)(2) conferred no jurisdiction over plaintiffs' claim.[4] *See Sierra Club v. Train*, 557 F.2d 485, 491 (5th Cir. 1977) (when no mandatory duty is alleged, claim is properly dismissed for lack of subject matter jurisdiction).

The judgment of the district court is AFFIRMED.

---

discretion are involved, the courts have not found this maxim controlling. *See, e. g., Sierra Club v. Train*, 557 F.2d 485, 488–91 (5th Cir. 1977) (construing a clause of the Federal Water Pollution Control Act quite similar to § 113(a)); *Inmates of Attica Correctional Facility v. Rockefeller*, 477 F.2d 375, 381 (2d Cir. 1973) (mandatory nature of the statutory term "required" is insufficient to evince congressional intent to bar the exercise of prosecutorial discretion).

**4.** Plaintiffs claim an alternate basis of jurisdiction in the Mandamus Act, 28 U.S.C. § 1361. As we have repeatedly held,

Three elements must exist before mandamus can issue: (1) the plaintiff must have a clear right to the relief, (2) the defendant must have a clear duty to act, and (3) no other adequate remedy must be available. *Jones v. Alexander*, 609 F.2d 778, 781 (5th Cir.), *cert. denied*, 449 U.S. 832, 101 S.Ct. 100, 66 L.Ed.2d 37 (1980). Our discussion concerning the EPA's discretion under the statute demonstrates that the EPA has no clear duty to act. Moreover, plaintiffs do have an adequate alternative remedy: § 304(a)(1) authorizes them to bring suit directly against the companies and state agencies that they claim are violating the Clean Air Act. 42 U.S.C. § 7604(a)(1).